# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | |
| ANADA, INC., | Chapter 11 |
| | Case No. 24- 10662 |
| Debtor. | |
| OVAINNOVATIONS, LLC, | Chapter 11 |
| | Case No. 24-10663 |
| Debtor. | |
| CRIMSON HOLDINGS, LLC, | Chapter 11 |
| | Case No. 24-10664 |
| Debtor. | |

## MOTION TO APPROVE USE OF CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION

NOW COME the Debtors, Anada, Inc., OvaInnovations, LLC and Crimson Holdings, LLC, by their attorneys, Krekeler Law, S.C., and request the Court approve the Debtors' proposed use of cash collateral of IsoNova Technologies, LLC ("IsoNova") and Dairy Farmers of America, Inc. ("DFA"), and provide adequate protection to the IsoNova and DFA therefor. In support thereof, the Debtors state as follows:

### Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a), and the order of reference in this district entered pursuant to §157(a). This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (M) and (O), as a matter concerning administration of the Debtors' estate, use and lease of property and adjustment of the debtor-creditor relationship. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

debtor-creditor relationship. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The basis for the relief sought herein is 11 U.S.C. §§ 363(c)(2)(B) and 1205, and Fed. R. Bankr. P. 4001(b).

3. On April 8, 2024, OvaInnovations, LLC, Anada, Inc., and Crimson Holdings, LLC (hereinafter, "Debtors") filed their petition for relief in this Court.

4. The Debtors remain in possession of their property and are operating and managing their business as debtors in possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

### Request for Relief

5. By this Motion, the Debtors seek an order authorizing them to use cash collateral in order to run their production of egg and chicken waste into high quality dried egg protein for cost-effective use in premium pet foods. The Debtors require the use of the cash collateral, which there are several creditors of the respective entities that have an interest in cash collateral:

    a. IsoNova Technologies, LLC ("IsoNova") is a creditor of Debtor, OvaInnovations, LLC. Debtors, Anada, Inc. and Crimson Holdings, LLC, are guarantors of the debt with IsoNova.

    b. Dairy Farmers of America, Inc. ("DFA") is a creditor of Debtor, Crimson Holdings, LLC.

6. IsoNova has a security interest in all assets of the Debtors, a lien on all ownership interests of the Debtors, accounts receivables, and junior lien on the mortgage on the Michigan property by virtue of a Settlement Agreement in the United States District Court for the Northern District of Iowa, Case No. 20-CV-71-CJW-KEM.

7. DFA has a promissory note secured with a first position mortgage on the Michigan property of Crimson Holdings, LLC in the city of Adrian, County of Lenawee. DFA also has a perfected security interest in Crimson Holdings equipment, machinery, and other personal property other than consumable goods.

8. In exchange for the continued use of the cash collateral, the Debtors will provide adequate protection to IsoNova and DFA for the purpose of carrying on their reasonable and necessary costs of operations.

9. The Debtors seek authority to use cash collateral in accordance with the budget attached hereto as **Exhibit A**. The budget sets forth the operating expenses that the Debtors must pay to continue to operate and pay all current expenses, including all items proposed as adequate protection, proposed below.

10. The Debtors' attorneys reasonably believe that IsoNova holds a first priority security interest in the bulk of the accounts receivable as set forth in **Exhibit A.**

11. For adequate protection of the mortgage and security interests of DFA, Debtors will provide adequate protection as follows:

    a. DFA will retain a first position mortgage on the Michigan property and security interest to equipment and machinery to the same extent it held a perfected pre-petition security interest in Debtors' assets identified in its UCC- financing statements filed with Michigan Department of State on December 1, 2021.

    b. The Debtors will make monthly payments for adequate protection in the amount of $36,000.00 a month by the 15th of each month.

    c. This payment is calculated by taking the outstanding balance of $2,265,000 on the note and applying an interest rate of 15% over the course of a 10-year amortization period.

12. For adequate protection of the security interests of IsoNova the Debtors will provide adequate protection as follows:

    a. IsoNova will retain a perfected post-petition security interest to the same extent it held a perfected pre-petition security interest in any of the Debtors' assets, extending to cash collateral received by the Debtors post-petition;

    b. Interest will accrue on the outstanding debt with IsoNova at the contractual non-default interest rate as specified in the underlying loan agreements.

    c. The Debtors will make adequate protection payments to IsoNova in the form of monthly payments in the amount of $60,000.00 per month. The payments will be made on or before the 15th day of each month with the first payment due April 15, 2024. This payment is an interest-only payment calculated by taking the outstanding balance of 9,500,000.00 on the note and applying an interest rate of 3% over the course of a 17-year loan amortization period.

13. If the Debtors default in any of the conditions of adequate protection provided herein, IsoNova or DFA shall provide the Debtors and their Attorney with a written notice of the default. If the default has not been cured within 10 days after Notice of Default is mailed, IsoNova or DFA may request a hearing to consider relief from the automatic stay provided by 11 U.S.C. Section 362 to allow it to proceed to appropriate remedies;

a. Upon approval of the Court, this authorization shall remain in effect until the earliest of (1) the date of Plan Confirmation, (2) dismissal of the case, or (3) conversion of the case;

## Basis for Relief Sought

14. Under § 363(c)(2) the Debtors may not use cash collateral unless IsoNova or DFA consents or the Court, after notice and a hearing, authorizes such use "…in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Additionally, § 363(e) provides that "on request of an entity that has an interest in property used; or proposed to be used…by a [debtor in possession], the court with or without a hearing, shall prohibit or condition such use…as is necessary to provide adequate protection of such interests."

15. Debtors' cash, deposit accounts, and payments on accounts receivables of pre-petition collateral received after filing of this Case, are encumbered by the lien granted to IsoNova, which constitutes IsoNova's cash collateral as defined in § 363 ("Cash Collateral").

16. Any other entity with a claim or interest in Cash Collateral is junior to IsoNova with an interest in accounts receivables, however it is in the best interest of IsoNova that the mortgage of DFA continues to not accrue interest and increase in debt.

17. As of the Petition Date, the Debtors did not have any unencumbered cash accounts from which they could meet foreseeable operating expenses. The Debtors require immediate use of Cash Collateral to sustain business operations, make payroll, and continue to make payments to critical vendors and landlords. All which Debtors need to continue to function to have an effective reorganization.

18. Debtors will have no ability to finance operations without access to Cash Collateral which would irreparably harm the Debtors, the estates, and all creditors. Debtors' cash on hand

consists of Cash Collateral. Debtors require immediate access to cash, on an interim basis pending entry of a final order to protect Debtors, the estates, and it is in the best interest of creditors.

19. Pursuant to Bankruptcy Rule 4001(b), Debtors respectfully request that the Court conduct an interim hearing on the use of Cash Collateral and adequate protection on an expedited basis to avoid immediate harm to the Debtors' estates and all parties in interest. A final hearing under Bankruptcy Rule 4001(b) may not be commenced earlier than fourteen (14) days after service of the motion. However, the Court, upon request, is allowed to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm the estate. Courts apply the business judgment applicable to other business decisions under this rule when examining requests for interim relief.

20. The Debtors respectfully request for all reasons stated in this Motion, and in the other pleadings submitted as part of the First Day Motions, that the Court grant an expedited hearing on this Motion and set a twenty-one (21) day objection deadline from the date of the initial hearing on this Motion. If there are no objections, Debtors request the Court to make the interim order final without further notice or hearing for use of Cash Collateral.

WHEREFORE, Debtors respectfully request entry of an Order granting the following relief:

A. Approving the authorization to use cash collateral of IsoNova, which secures the balance due it, pursuant to § 363(c) and Rule 4001(b);

B. Granting adequate protection to the IsoNova and DFA as proposed herein;

C. Setting a hearing to consider final authorization to use cash collateral of the IsoNova while this case is pending; and

D. Granting other relief the Court deems just and equitable under the circumstances

Dated: April 8, 2024.

                **KREKELER LAW, S.C.**

                By: /s/ Kristin J. Sederholm

                    Kristin J. Sederholm
                    Proposed Attorneys for Debtors and
                    Debtors in Possession

***Address*:**
26 Schroeder Ct. Suite 300
Madison, WI 53711
(608) 258-8555
(608) 258-8299 (Fax)
KSederho@ks-lawfirm.com

**Bankruptcy Plan Summary**
**April-December 2024**
**As of 4/8/2024**

| | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | 2024 |
|---|---|---|---|---|---|---|---|---|---|---|
| Pounds Sold | 614,167 | 614,167 | 614,167 | 614,167 | 614,167 | 614,167 | 614,167 | 614,167 | 614,167 | 5,527,500 |
| Capacity % (1.8M/mo) | 29% | 29% | 29% | 29% | 29% | 29% | 29% | 29% | 29% | 22% |
| Price Sold | $ 1.70 | $ 1.70 | $ 1.70 | $ 1.70 | $ 1.70 | $ 1.70 | $ 1.70 | $ 1.70 | $ 1.70 | $ 1.70 |
| **Inedible Revenue** | $ 1,045,748 | $ 1,045,748 | $ 1,045,748 | $ 1,045,748 | $ 1,045,748 | $ 1,045,748 | $ 1,045,748 | $ 1,045,748 | $ 1,045,748 | $ 9,411,728 |
| **Edible Revenue** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Revenue** | $ 1,045,748 | $ 1,045,748 | $ 1,045,748 | $ 1,045,748 | $ 1,045,748 | $ 1,045,748 | $ 1,045,748 | $ 1,045,748 | $ 1,045,748 | $ 9,411,728 |
| Supply Cost | $ 154,345 | $ 154,345 | $ 154,345 | $ 154,345 | $ 154,345 | $ 154,345 | $ 154,345 | $ 154,345 | $ 154,345 | 1,389,103 |
| Shipping Cost | $ 153,138 | $ 153,138 | $ 153,138 | $ 153,138 | $ 153,138 | $ 153,138 | $ 153,138 | $ 153,138 | $ 153,138 | 1,378,238 |
| Pay roll (hourly and salary) | $ 133,332 | $ 133,332 | $ 133,332 | $ 133,332 | $ 133,332 | $ 133,332 | $ 133,332 | $ 133,332 | $ 133,332 | 1,199,986 |
| Production Cost | 184,950 | 184,950 | 184,950 | 184,950 | 184,950 | 184,950 | 184,950 | 184,950 | 184,950 | 1,664,550 |
| **Total Inedible Expenses** | $ 625,764 | $ 625,764 | $ 625,764 | $ 625,764 | $ 625,764 | $ 625,764 | $ 625,764 | $ 625,764 | $ 625,764 | $ 5,631,877 |
| *Expense Per Dry lb* | $ 0.96 | $ 0.96 | $ 0.96 | $ 0.96 | $ 0.96 | $ 0.96 | $ 0.96 | $ 0.96 | $ 0.96 | $ 0.96 |
| *GP/Dry lb* | $ 0.68 | $ 0.68 | $ 0.68 | $ 0.68 | $ 0.68 | $ 0.68 | $ 0.68 | $ 0.68 | $ 0.68 | $ 0.68 |
| **Gross Profit Inedible** | $ 419,983 | $ 419,983 | $ 419,983 | $ 419,983 | $ 419,983 | $ 419,983 | $ 419,983 | $ 419,983 | $ 419,983 | $ 3,779,851 |
| **Gross Profit Edible** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Gross Profit** | $ 419,983 | $ 419,983 | $ 419,983 | $ 419,983 | $ 419,983 | $ 419,983 | $ 419,983 | $ 419,983 | $ 419,983 | $ 3,779,851 |
| SGA People Cost | $ 70,051 | $ 70,051 | $ 70,051 | $ 70,051 | $ 70,051 | $ 70,051 | $ 70,051 | $ 70,051 | $ 70,051 | 630,458 |
| Equipment Leases | $ 165,494 | $ 165,494 | $ 165,494 | $ 165,494 | $ 165,494 | $ 165,494 | $ 165,494 | $ 165,494 | $ 165,494 | 1,489,446 |
| Overhead | $ 58,450 | $ 58,450 | $ 58,450 | $ 58,450 | $ 58,450 | $ 58,450 | $ 58,450 | $ 58,450 | $ 58,450 | 526,050 |
| **EBITDA** | $ 125,988 | $ 125,988 | $ 125,988 | $ 125,988 | $ 125,988 | $ 125,988 | $ 125,988 | $ 125,988 | $ 125,988 | $ 1,133,896 |